UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : |
| AUTOMATED WASTE DISPOSAL, INC., DIVERSIFIED WASTE DISPOSAL, INC., SUPERIOR WASTE DISPOSAL, INC., JAT TRUCK REPAIR SERVICE, INC., TRASHERS, LLC., 530 MAIN STREET NORTH CORP., DANBURY CARTING COMPANY, INC., TRANSFER SYSTEMS, INC., ADVANCED RECYCLING CORP., THOMAS' REFUSE SERVICES, INC., AND JAMES GALANTE, *et al.*, | : Criminal No. 3:06 CR 00161 (EBB)<br><br>: **AFFIDAVIT IN SUPPORT**<br>**OF MOTION TO SUPPRESS**<br>:<br><br>:<br><br>: |

STATE OF NEW YORK   )
                     ) ss.:
COUNTY OF NEW YORK   )

J. BRUCE MAFFEO, an attorney admitted to practice in the District of Connecticut, swears the following to be true:

1. I represent Automated Waste Disposal, Inc., Diversified Waste Disposal, Inc., Superior Waste Disposal, Inc., JAT Truck Repair Service, Inc., Trashers, LLC, 530 Main Street North Corp., Danbury Carting Company, Inc., Transfer Systems, Inc., Advanced Recycling Corp., Thomas' Refuse Services, Inc, (hereafter "the Corporate Defendants"), in the above-captioned action. I submit this affidavit in support of the corporate defendants' motion to suppress various evidence, to dismiss various counts of the indictment, and for other relief.

2. The information in this affidavit is based upon my review of documents produced by the government in discovery and provided by prior counsel for the corporate defendants,

conversations with federal prosecutors involved in this case, and where noted, upon information and belief.

3. Specifically, I have reviewed the following documents obtained from the government in discovery and have attached hereto copies of the same:

   a. Affidavit of Special Agent Eric Grunder, dated August 12, 2004 in support of a wiretap application for the cell phone of Richard Galietti (Exhibit A);

   b. Letter of AUSA Michael Gustafson dated November 6, 2007, with attached documents from FBI (Exhibit B);

   c. Memorandum of Understanding and Agreement between the Federal Bureau of Investigation and Waste Management, Inc. ("WMI") dated November 4, 2003 (Exhibit C);

4. Further, I have reviewed many of the consensual recordings made during the course of the investigation by the undercover agent positioned at WMI. Citations to these recordings, and/or excerpts quoted from them, are based on my own review and draft transcripts of the same.

Government Investigation of WMI

5. Based upon my representation of other clients unrelated to the instant matter, I am aware that beginning in late 1999 and continuing into the early spring and summer of 2004, the New York office of the Justice Department's Anti-Trust Division was conducting an investigation into potential bid-rigging by WMI and another carting company in Rhode Island. Specifically, I am aware because of my representation of employees of the rival carting company who testified before the grand jury in April and June, 2003. Among other matters, the grand jury investigation was examining allegations that CW-1, an

employee of WMI, colluded with a relative, employed by a rival national carting company, in submitting bids to municipal customers in Rhode Island.

6. In response to my request, the government acknowledged the existence of the grand jury investigation into WMI's conduct in Rhode Island, verified its dates and provided copies of the closing memorandum to the investigation as well as the opening "EC" by the FBI. *See* Exhibit B, Attachments A & B. The letter also advised defense counsel that on June 19, 2003, a meeting took place between the prosecutors from the Connecticut U.S. Attorney's office and prosecutors from the Anti-Trust Division in New York. The government has advised me separately that a senior attorney from the Washington headquarters of the Justice Department's Organized Crime and Racketeering Section, also attended the meeting.

Litigation Between WMI and Corporate Defendants

7. The Housatonic Resource Recovery Association ("HRRA"), a regional municipal solid waste and recycling management organization for eleven towns in western Connecticut, established a system wherein towns contracted with private haulers to collect and transport waste to local transfer stations run by HRRA to be sorted and transported to a "resource recovery facility," otherwise known as a burn plant, where the trash is burned at very high temperatures to generate electricity and other re-usable energy.

8. In October, 1991, the HRRA awarded the contract to operate the burn plants to Wheelabrator Environmental Systems ("Wheelabrator"), a subsidiary of WMI. To fulfill its contract with HRRA, Wheelabrator had to meet certain tonnage requirements of waste burned each month or pay fines, and further, to provide transfer stations where the waste would be delivered and sorted in preparation for hauling to the burn plants.

9. After obtaining the HRRA contract, Wheelabrator requested bids for the operation of the transfer station. Upon information and belief, after considering various bids, Wheelabrator awarded the contract to Automated Waste Disposal ("AWD"), one of the corporate defendants. AWD formed a company named Greensphere to handle the transfer of all HRRA waste at its station at 307 White Street in Danbury. In operation, the transfer station serves to weigh the load brought in by the private haulers and report the total to Wheelabrator; it is Wheelabrator who bills the private haulers for the amount of waste burned, and should the private haulers fail to keep current on their bills, direct the transfer station to stop accepting their loads.

10. In May, 1997, Wheelabrator sued Galante and his companies affiliated with the transfer station, claiming principally that they were diverting thousands of tons of HRRA waste away from Wheelabrator in violation of its contract and other state laws. *See* Complaint at 7-14, *Wheelabrator v. Galante, et al.,* 97 Civ. 1040 (AVC) (attached hereto as Exhibit D).

11. Galante and Greensphere counterclaimed for breach of contract, anti-trust and unfair trade violations, a series of cross-pleadings and motions were filed, and discovery was conducted, interspersed with many settlement conferences. *See* Docket, 97 Civ. 1040 (AVC) (attached hereto as Exhibit E). After several years of litigation, including significant motion practice, discovery, and several aborted attempts at negotiation, immediately prior to the preparation for trial, the matter was announced as settled and the case closed on August 12, 2002. *Id.*

12. However, the parties continued to negotiate the details of their settlement at least until June, 2004, when the parties signed a final agreement. *See* Stipulation and Agreement of Compromise, Settlement and Release, dated June 30, 2004 (attached hereto as Exhibit F).

13. Also, on May 28, 2002, Greensphere sued WMI in United States District Court for the District of Connecticut. *See* Complaint, *Greensphere v. Waste Management,* 02 Civ. 793 (SRU)(attached hereto as Exhibit G). In brief, the suit alleged that WMI was bypassing the transfer station operated by Greensphere, and instead sending waste picked up from within the HRRA region directly to the Wheelabrator burn plant, thereby avoiding the "tip fee" and obtaining an unfair price advantage in its hauling contracts. *Id..* The settlement reached in principle by August 2002 for the related case also covered the resolution of this matter, and after the parties notified the court, this matter was dismissed on November 27, 2002. *See* So-Ordered Dismissal on Response to Order to Show Cause and Motion to Dismiss, on November 19, 2002 (attached hereto as Exhibit H); *see also* Docket, *Greensphere v. Waste Management,* 02 Civ. 793 (SRU)(attached hereto as Exhibit I).

14. In February 2001, Wheelabrator filed suit in Connecticut state court against Galante, AWD and two other corporations including the corporate defendant, Diversified Waste Disposal ("DWD") claiming that the defendants together owed Wheelabrator some $1.3 million dollars in outstanding invoices for waste disposal services at the burn plants. *See* Stipulation for Judgment, dated July 25, 2001, *Wheelabrator Environmental Systems, Inc. v. Bridgeport Resco Co.,* 01 Civ. 380731-S (PJR), Superior Court, Judicial District of Fairfield (attached hereto as Exhibit J). In this suit, Wheelabrator claimed that Galante was refusing to pay the invoices in return for a favorable settlement of the federal

lawsuits. In July, 2002, the parties settled the state suit. *See* Stipulation for Judgment, dated July 25, 2001 (attached hereto as Exhibit K).

Subsequent WireTap Applications

15. After the initial wiretap application submitted August 12, 2004, the government submitted numerous subsequent applications for extensions on existing wiretaps, as well as for new wiretaps on additional phones. All of these subsequent applications referred back and relied upon the allegations from the initial wiretap. *See e.g.* Grunder Affidavit dated October 28, 2004 (attached hereto as Exhibit L).

16. Further, a review of the sealing orders sought for the various wiretap applications has revealed at least one instance where the government failed to seek prompt judicial sealing. Specifically, in the order dated August 10, 2005, the government admitted that while the wiretap order for Target Phone 8 expired on June 29, 2005, sealing was not sought at that time due to "oversight." *See* Sealing Application dated August 10, 2005 (attached hereto as Exhibit M). Target phone 8 was a cell phone registered in one of the corporate defendant's and used by former co defendant, Richard Caccavale.

Search of July 19, 2005

17. The government submitted two affidavits in support of a search warrant upon some forty-one different locations, both by Special Agent Jeffrey Waterman. *See* Affidavit of Special Agent Jeffrey Waterman, dated June 3, 2005 (attached as Exhibit N); Affidavit of Special Agent Jeffrey Waterman, dated July 14, 2005 (attached as Exhibit O). The list of items purportedly authorized to be seized were set forth in Schedule A attached to the second Waterman affidavit. *See* Schedule A (attached hereto as Exhibit P).

18. Upon information and belief, federal agents conducted searches of multiple locations on July 19, 2005. As to the location of 307 White Street, Danbury, the agents seized almost every piece of paper located in the offices. *See* Affidavit of Denise Raiford, dated January 29, 2008 (attached hereto as Exhibit Q).

19. Further, upon information and belief, the approximate number of boxes seized by federal agents from the offices of the corporate defendants at 307 White Street totals some 697 boxes, according to lists provided by the FBI, with another 212 boxes taken from 770 Derby Avenue.

20. A review of an index provided by the FBI of the items seized from various locations demonstrates that the search conducted included many items either unrelated to the investigation or beyond the scope of probable cause. For example, from 307 White Street, the agents took a blank "last will & testament" kit, a pad with a list of song titles, a yellow post-it notes stating "I love you daddy;" and from 10 Weldon Woods, folders containing owner's manuals for his digital cable and copier machine, one referencing family court documents for his son, and various folders pertaining to home repair and home heating bills. Moreover, the items seized from 307 White Street included many files related to the Trashers hockey team.

Dated: New York, New York
January 30, 2008

KAREN KOLESSAR
Notary Public, State of New York
No. 01KO6160922
Qualified in Richmond County
Commission Expires Feb. 12, 20 10

_____
J. Bruce Maffeo

Sworn to before me,
this 30th day of January, 2008

*Karen Kolessar*
Notary Public

92432

## **EXHIBIT LIST**

A. Affidavit of Special Agent Eric Grunder in Support of Wiretap Application, dated August 12, 2004

B. Letter of AUSA Michael Gustafson, dated November 6, 2007, with attached FBI correspondence

C. Memorandum of Understanding and Agreement between WMI and the FBI, dated November 4, 2003

D. Complaint, *Wheelabrator Environmental Systems v. James Galante, et al.*, 97 Civ. 01040 (AVC)

E. Docket Sheet, *Wheelabrator Environmental Systems v. James Galante, et al.*, 97 Civ. 01040 (AVC)

F. Stipulation and Agreement of Compromise, Settlement and Release, dated June 30, 2004, in *Wheelabrator Environmental Systems v. James Galante, et al.*, 97 Civ. 01040 (AVC)

G. Complaint, *Greensphere Inc. v. Waste Management, Inc.*, 02 Civ. 793 (SRU)

H. So-Ordered Dismissal on Response to Order to Show Cause and Motion to Dismiss, dated November 27, 2002, *Greensphere Inc. v. Waste Management, Inc.*, 02 Civ. 793 (SRU)

I. Docket, *Greensphere Inc. v. Waste Management, Inc.*, 02 Civ. 793 (SRU)

J. Application for Prejudgment Remedy, *Wheelabrator Environmental Systems v. Automated Waste Disposal, et al.*, No. Cv. 01-0380731-S (PRJ), Superior Court, Judicial District of Fairfield, at Bridgeport

K. Stipulation for Judgment, in *Wheelabrator Environmental Systems v. Automated Waste Disposal, et al.*, No. Cv. 01-0380731-S (PRJ), Superior Court, Judicial District of Fairfield, at Bridgeport

L. Affidavit of Special Agent Eric Grunder to Intercept Wire Communications, dated October 28, 2004

M. Sealing Application, dated August 10, 2005, for Target Phone 8

N. Affidavit of Special Agent Jeffrey Waterman, in Support of Search Warrant, dated June 3, 2005

O. Second Affidavit of Special Agent Jeffrey Waterman, in Support of Search Warrant, dated July 14, 2005

P. Attachment to Search Warrant: Schedule A, List of Items to be Seized

Q. Affidavit of Denise Raiford, dated January __, 2008

92213